IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SIMONE CRIBBS,<br><br>                Plaintiff,<br><br>vs.<br><br>ACCREDITED COLLECTION SERVICES, INC., and BRUMBAUGH & QUANDAHL, P.C.,<br><br>                Defendants. | 8:15-CV-313<br><br>ORDER |

      This is a case of counsel run amuck. The actual facts of this case are simple and straightforward: two letters, a telephone call, and a default judgment in state court. But the parties have managed to turn that into seven pending motions and several hundred pages of evidence and argument. And their 16 briefs are littered with accusations and invective against opposing parties and opposing counsel. That is, in some part, the Court's fault: the Court should not have let things get this far out of control. But it stops today.

      In an effort to cut through the Gordian knot into which the parties have tied themselves, the Court will skip almost to the end: the defendants' motion for summary judgment (filing 70). Based on the essentially undisputed material facts, the Court finds that the defendants are entitled to summary judgment, and will grant their motion. With the exception of some evidentiary arguments addressed below, that will moot the parties' remaining motions and result in a final judgment for the defendants.

## BACKGROUND

      The plaintiff, Simone Cribbs, asserts claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and the Nebraska Consumer Protection Act (NCPA), Neb. Rev. Stat. § 59-1601 *et seq.*, for the defendants' conduct in collecting a debt. *See* filing 1.

FACTUAL BACKGROUND

The plaintiff incurred medical debts in 2012 and 2013. Filing 71 at 2.[1] Those bills went unpaid and defendant Accredited Collection Services (ACS) retained defendant Brumbaugh and Quandahl, P.C. (B&Q), to pursue legal action against the plaintiff. Filing 71 at 2. B&Q sent a demand letter, but received no response. Filing 71 at 2. So, on May 27, 2015, B&Q filed suit in state district court on behalf of ACS. Filing 71 at 2. The plaintiff was served on June 1. Filing 71 at 2.

The plaintiff did not appear or defend in state court. Filing 71 at 2. But she did call B&Q on June 10, 2015, and leave a message for Matthew Barnes, a legal assistant at B&Q. Filing 71 at 2; *see* filing 71-2. Barnes returned her call the same day, and a recording of the conversation is in evidence. Filing 71-11, Exh. A. Barnes told the plaintiff that only way to stop the lawsuit was to pay her debt in full, that ACS would want to pursue a judgment if the debt was not paid, and that once the debt was paid B&Q would file a satisfaction of judgment. Filing 71-11, Exh. A; *see* filing 71 at 3. The plaintiff agreed to make 6 monthly payments of $65 each to satisfy the debt. Filing 71 at 3. The plaintiff also asked questions about the pending court case, to which Barnes responded by repeatedly telling the plaintiff that her legal questions would have to be directed to her own attorney. Filing 71-11, Exh. A.

Barnes promised, during the telephone call, to send the plaintiff a letter detailing the payment plan. Filing 71 at 3. So, B&Q sent the plaintiff a letter dated June 10, 2015, with the following body text:

> Per our discussion, you have agreed to make payments on the above referenced file in the amount of $65.00 beginning 19th of June, 2015, and continuing monthly on or before the 19th day of each month. Please send your payments to our office on or before the due date. Our office will not send out reminder notices.

Filing 31-2 at 3. The letter also contained payment instructions. Filing 31-2 at 3. The plaintiff made the first payment. *See* filing 71 at 3.

On July 2, 2015, Barnes reviewed the plaintiff's file and noted that she had still not appeared or defended in state court. Filing 71 at 3. So, he prepared a motion for default judgment. Filing 71 at 3. The same day, a letter

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1).

was sent to the plaintiff setting forth the remaining balance, reminding her of the payment instructions, and stating: "This matter can still be resolved cordially." Filing 31-2 at 4. On July 7, the motion for default judgment was filed, and on July 8, default judgment was entered. Filing 71 at 3.

Cribbs did not respond to the July 2 letter; instead, she filed this case. Filing 71 at 3; filing 1. Nonetheless, she continued to make the agreed-upon payments, and on April 5, 2016, B&Q filed a satisfaction of judgment in the state court case. Filing 71 at 3.

### PROCEDURAL HISTORY

The plaintiff's initial complaint was premised on the theory that the defendants violated the FDCPA by suing her, despite the fact that she was making payments. *See* filing 1. Both defendants answered that complaint. Filing 10; filing 11. The plaintiff later filed an amended complaint alleging the sequence of events set forth above—that is, that the lawsuit preceded the June 10 and July 2, 2015 letters. Filing 16. Neither defendant answered that complaint. The plaintiff moved for partial summary judgment. Filing 29.

The defendants opposed summary judgment. Filing 34. The plaintiff filed a motion to strike (filing 44) some of the defendants' evidence and argument in opposition to summary judgment, contending in part that the defendants waived certain arguments by not answering the plaintiff's amended complaint. *See* filing 45. (As will be explained below, the motion to strike was wholly unnecessary, because it was a vehicle for objecting to and arguing against the defendants' opposition to summary judgment: the arguments it presented *should* have simply been asserted in the summary judgment briefing.)

At that point, the defendants noticed that the plaintiff's amended complaint (filing 16) had been filed out of time, and without leave of the Court. *See* Fed. R. Civ. P. 15(a). The defendants moved to strike the amended complaint, filing 49, and the Magistrate Judge granted that motion, filing 52. So, the operative pleadings were (and are) filing 1, filing 10, and filing 11. *See* filing 52. The plaintiff moved to reconsider that order, in part arguing for leave to file an amended complaint. Filing 53. The Magistrate Judge ordered the defendants to respond to the motion to reconsider if they opposed leave to amend. Filing 55. They did. Filing 58. And then, they filed their own motion for summary judgment. Filing 70.

Apparently unsatisfied with one unnecessary motion to strike, the plaintiff filed a separate motion reasserting her earlier motion to strike. Filing 79. Not to be outdone, the defendants filed an unnecessary motion to strike some of the plaintiff's evidence opposing summary judgment (filing 81), and interposed an objection (filing 84) to the plaintiff's motion to reassert her

- 3 -

motion to strike. (The objection was contrary to the Court's local rules. *See* NECivR 7.1(b)(1)(A).) This is the rat king the Court must now disentangle.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

As alluded to above, the Court will use the defendants' motion for summary judgment (filing 70) as its primary vehicle for disposing of this case. But as a preliminary matter, the Court must address those aspects of the plaintiff's motion to strike necessary to establish the scope of the record.

### EVIDENTIARY ISSUES

The plaintiff's motion to strike (filing 44) implicates evidentiary issues that are relevant to the evidence supporting the defendants' motion for summary judgment. But the plaintiff's objections miss the mark.

On summary judgment, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be

admissible in evidence. Rule 56(c)(2). "There is no need to make a separate motion to strike." Rule 56 advisory committee's note; *see Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012). And when an objection is made, the burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated. Rule 56 advisory committee's note. The standard at the summary judgment stage is not whether the evidence offered would be admissible at trial, "it is whether it *could* be presented at trial in an admissible form." *See,* Rule 56(c)(2); *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012).

For the most part, the plaintiff does not even attempt to argue that the defendants' evidence could not be presented in an admissible form at trial; accordingly, those objections are without merit. *See Gannon Int'l*, 684 F.3d at 793. And the plaintiff's arguments premised on the defendants' alleged failure to answer have been mooted by the Magistrate Judge's order striking the plaintiff's amended complaint.

The issue that does require more discussion is the plaintiff's oft-reiterated contention that the June 10, 2015 telephone call is inadmissible parol evidence. That argument is without merit, for several reasons.

First, the parol evidence rule does not apply here: this is not an action on a contract. The parol evidence rule states that if negotiations between the parties result in an integrated agreement which is reduced to writing, then, in the absence of fraud, mistake, or ambiguity, the written agreement is the only competent evidence of the contract between them. *Podraza v. New Century Physicians of Nebraska, LLC*, 789 N.W.2d 260, 266 (Neb. 2010).[2] This rule gives legal effect to the contracting parties' intention to make their writing a complete expression of the agreement that they reached, to the exclusion of all prior or contemporaneous negotiations. *Id.* The June 10, 2015 letter is not a contract, and does not purport to be a contract. No one is trying to enforce it as if it were a contract: there is no breach of contract claim.

Instead, the claim presented here is based on the defendants' conduct, and the June 10, 2015 telephone call clearly bears on that claim. The plaintiff's burden is to prove that the defendants' conduct was false, deceptive, or misleading; she cannot do that by arbitrarily drawing a line

---

[2] The plaintiff cites Nebraska law in support of her parol evidence argument. *See* filing 77 at 25-26. The Court does not believe that state contract law is applicable to this aspect of the plaintiff's federal law claim, but does not need to answer that question to dispose of the plaintiff's argument.

- 5 -

between oral and written communication.³ And even if the parol evidence rule was somehow applicable, it would not be violated by evidence of the telephone call, because the June 10, 2015 letter plainly was not intended to be a complete expression of the parties' agreement: it begins, "[p]er our discussion," and sets forth only the plaintiff's obligations pursuant to that discussion. The defendants are not offering the evidence to vary the terms of the agreement—they are offering the evidence to provide the context necessary to understand what the letter was meant to be a record of.

Simply put, the parol evidence rule does not preclude considering communication between a debt collector and a consumer when determining whether a subsequent communication was false, deceptive, or misleading within the meaning of the FDCPA. The Court finds no merit to the plaintiff's motion to strike.

## FDCPA CLAIM

The FDCPA generally provides that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. § 1692(e). More specifically, the FDCPA provides that conduct violating the act includes:

- falsely representing the character, amount, or legal status of any debt;
- threatening to take any action that cannot legally be taken or that is not intended to be taken;
- using a false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer; and
- collecting an amount not authorized by the agreement creating the debt or permitted by law.

*See*, §§ 1692e(2)(A), (5), (10) & 1692(f)(1); *see also*, filing 1 at 4; filing 53-1 at 5; filing 77 at 27. The plaintiff asserts those subsections in her briefing, *see* filing 77 at 27, but does not appear to focus her argument on any subsection in particular. *See* filing 77. The Court views the plaintiff's argument as

---

³ And, the Court notes that despite her parol evidence argument, the plaintiff's case in large measure depends on the telephone call as well: without it, there are no representations in the written communications that could be understood in any way as promising to refrain from seeking a default judgment.

- 6 -

framed under § 1692e generally.[4] *See Peters v. Gen. Serv. Bureau*, 277 F.3d 1051, 1055 (8th Cir. 2002).

Whether a communication is false, deceptive, or misleading is considered from the perspective of an "unsophisticated consumer." *Haney v. Portfolio Recovery Assocs., L.L.C.*, 837 F.3d 918, 924 (8th Cir. 2016). This standard is designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder. *Id.* The unsophisticated consumer standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters. *Id.*

The plaintiff's argument is that the letters of June 10 and July 2, 2015 were false, deceptive, or misleading: she argues that the telephone call "is irrelevant and should not be considered in connection with the June 10 letter."[5] Filing 77 at 23; *see* filing 77 at 3. As implied above, the Court finds no merit to this argument. The plaintiff's position seems to be that the June 10 letter was confusing because of its silence regarding the subject of a potential default judgment, but that subject was plainly discussed between the parties on the same day. It is hard for the Court to see how to evaluate whether a letter referencing an earlier telephone call was "misleading" without considering the contents of the telephone call. The FDCPA itself recognizes that communication between a debt collector and a consumer does not take place in a vacuum—the act imposes specific requirements on the initial communication between a debt collector and a consumer that are not imposed on every subsequent communication. *See* § 1692e(11). Whether a particular communication was misleading cannot be wholly separated from the defendants' entire course of conduct.

The plaintiff also argues that the telephone call, if considered, supports her case. Filing 77 at 20-21. Specifically, the plaintiff argues that "[d]efendants' excerpts of the call prove that at no time did B & Q fully inform [the plaintiff of] her legal options and how and when a judgment would be taken, despite her making payments." Filing 77 at 21. The Court's review of

---

[4] For the sake of completeness, the Court also notes that the record does not support a claim pursuant to § 1692e(2)(A) or (5), or § 1692(f)(1): there is nothing to suggest that the defendants falsely represented the debt or threatened to take action they legally could not, and the plaintiff's theory is not premised on any over-collection.

[5] The Court does not understand the plaintiff to be claiming that the default judgment itself was an FDCPA violation. Whether statements to a court are actionable under the FDCPA is an unsettled question. *See*, *Haney*, 837 F.3d at 933; *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 818 (8th Cir. 2012); *Mayhall v. Berman & Rabin, P.A.*, No. 4:13-CV-175, 2014 WL 340215, at *5 (E.D. Mo. Jan. 30, 2014).

the telephone call does not support that assertion: the plaintiff was expressly told that "[t]he only way to stop the lawsuit's by paying this in full." Filing 71-11, Exh. A. The record is simply inconsistent with the plaintiff's core assertion that she was never informed that a judgment would be taken.

The plaintiff also contends that the July 2, 2015 letter was misleading. The plaintiff's primary focus is the suggestion that the matter "can still be resolved cordially." Filing 31-2 at 4. The plaintiff points out that the letter does not advise how much time she had to work things out "cordially," and does not mention the possibility of a default judgment.[6] Filing 77 at 26. But it is not clear how the FDCPA imposed such an obligation on the defendants. The plaintiff was expressly informed that the only way to stop B&Q from pursuing a judgment on ACS's behalf was to pay the debt in full. Filing 71-11, Exh. A. Nothing in the June 10 or July 2 letters contradicted that advisement. *See* filing 31-2 at 3-4. There is nothing in the record to suggest that the defendants acted to lull the plaintiff into not filing an answer before moving for default judgment. *Compare, e.g., Morrison v. Hosto, Buchan, Prater & Lawrence,* 2009 WL 3010917, at *3 (E.D. Ark. 2009), *with In re Humes,* 468 B.R. 346, 354 (Bankr. E.D. Ark. 2011), *and Karr v. Med-1 Sols., LLC,* No. 1:12-CV-1182, 2014 WL 1870928, at *6 (S.D. Ind. May 7, 2014).

And even if the Court accepts the plaintiff's general proposition that consumers enter into payment plans in order to avoid having a judgment entered against them, and that an unsophisticated consumer might believe that making installment payments would prevent further legal action—that is not what happened here. The plaintiff was advised when she made the payment arrangements that ACS would want B&Q to pursue a judgment and only full payment would prevent it. The promise that B&Q made was to *satisfy* that judgment when all the arranged payments were made, and B&Q kept that promise.

To be clear—the Court has no basis to doubt that the plaintiff was genuinely confused. She avers that she "was confused and did not understand that a judgment would be taken even with the payment plan or [she] would have chosen to defend and file a response to the lawsuit." Filing 78-3. But even accepting that as true, it is beside the point, because FDCPA violations are analyzed objectively. *See Adams v. J.C. Christensen & Assocs., Inc.,* 777 F. Supp. 2d 1193, 1197 (D. Minn. 2011). A plaintiff may pursue a claim for an FDCPA violation even if she was not actually confused by a debt collector, but

---

[6] The plaintiff also asserts other alleged deficiencies in the July 2 letter, such as vagueness about whether interest was accruing, and the lack of a deadline for default on the payment plan. Filing 77 at 26. The Court does not address these arguments, because they are encompassed by neither the operative complaint nor the plaintiff's proposed amended complaint. *See*, filing 1; filing 53-1.

the converse is also true: a plaintiff who was actually confused does not automatically have a claim. *See id.* What matters is whether the debt collector's conduct, when viewed objectively, violated the statute. *Id.* And viewed objectively, the defendants' conduct was not misleading, even to an unsophisticated consumer. The June 10, 2015 telephone call explained the defendants' position to the plaintiff in clear terms. The only thing that the plaintiff can really say about the June 10 and July 2 letters to make them "misleading" is that they do not *repeat* the information that the plaintiff had already been given. The Court can find no basis in the FDCPA for requiring a debt collector to repeat information that was already provided to the consumer and not contradicted.

In sum, the Court finds that when the June 10 and July 2, 2015 letters are considered, in the context of the June 10 telephone call, there is no FDCPA violation. That claim will be dismissed.

### NCPA Claim

The plaintiff's NCPA claim also fails, for two reasons. First, the NCPA claim is premised entirely on the alleged FDCPA violation, filing 77 at 44-47, and fails for the same reasons. Second, the ambit of the NCPA is limited to "unfair or deceptive acts or practices that affect the public interest." *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 141 (Neb. 2000); *see also*, *Eicher v. Mid Am. Fin. Inv. Corp.*, 748 N.W.2d 1, 12 (Neb. 2008); *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 36 (Neb. 2004). The NCPA is not available to address a private wrong where the public interest is unaffected. *Nelson*, 605 N.W.2d at 142; *see*, *Eicher*, 748 N.W.2d at 12; *Arthur*, 676 N.W.2d at 37. Specifically, the conduct at issue must directly or indirectly affect the people of Nebraska. *Arthur*, 676 N.W.2d at 37-38.

In other words, an NCPA claim requires a showing that not just one, but many Nebraska citizens are affected by a defendant's practices. *See*, *Eicher*, 748 N.W.2d at 12; *Arthur*, 676 N.W.2d at 38. The plaintiff has not made that showing here.

### Remaining Issues

That leaves just a few matters to clean up. First, the Court will deny the plaintiff's motion to reconsider (filing 53)—that is, the plaintiff's request for leave to file an amended complaint—as futile. The Court has concluded that the essentially undisputed facts do not establish an FDCPA violation, and nothing in the plaintiff's proposed amended complaint (filing 53-1) would change that. In addition, the plaintiff's motion for summary judgment (filing 29) will obviously also be denied.

Next, the defendants' motion to strike (filing 81) will be denied. While the Court understands the defendants' concerns about the affidavit from plaintiff's counsel (filing 78-1), the Court's resolution of the merits of this dispute has mooted the defendants' motion to strike. The defendants' objection (filing 84) to the plaintiff's motion to strike (filing 44) is also moot.

Finally, the Court notes that both parties have argued, repeatedly and at length, about who has been litigating in bad faith and who ought or ought not be sanctioned. *See*, filing 34 at 11; filing 45 at 10-15; filing 48 at 20-25; filing 56 at 9-14; filing 58 at 4, 7-10; filing 60 at 4; filing 71 at 29-35; filing 77 at 49-59; filing 83 at 27-33. Sanctions are, however, the one thing that the parties do not seem to have a pending motion for. Nor is it clear why the parties felt it necessary to engage on the subject so vociferously before a determination on the merits was made, given that the sort of sanctions the parties are discussing are generally sought after judgment pursuant to Fed. R. Civ. P. 54(d). So, the Court declines to rule on any request for sanctions in the absence of a post-judgment motion.[7]

IT IS ORDERED:

1. The defendants' motion for summary judgment (filing 70) is granted.

2. The plaintiff's motion for summary judgment (filing 29) is denied.

3. The plaintiff's motion to strike (filing 44) is denied.

4. The plaintiff's motion to reconsider (filing 53) is denied as moot.

5. The plaintiff's motion to reassert (filing 79) is denied.

6. The defendants' motion to strike (filing 81) is denied as moot.

7. The defendants' objection (filing 84) is denied as moot.

---

[7] To be clear: this should not, *in any way*, be construed as encouraging the filing of such a motion. In light of the public policy objectives of the FDCPA, it has been held that § 1692k(a)(3) should be construed narrowly so as not to discourage private litigation under the FDCPA. *See Mayhall v. Berman & Rabin, P.A.*, 13 F. Supp. 3d 978, 982 (E.D. Mo. 2014) (collecting cases).

8. The plaintiff's complaint is dismissed.

9. A separate judgment will be entered.

Dated this 27th day of March, 2017.

>BY THE COURT:
>
>_____
>John M. Gerrard
>United States District Judge